# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

KATRINA E. HOOD,

    Plaintiff,

v.

MONTGOMERY COUNTY, MARYLAND,

    Defendant.

Civil Action No. TDC-16-4085

## MEMORANDUM OPINION

Plaintiff Sergeant ("Sgt.") Katrina Hood, a corrections officer with the Montgomery County Department of Correction and Rehabilitation ("DOCR") filed suit against Defendant Montgomery County, Maryland ("the County") alleging race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e-17 (2012), and a violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601–2654 (2012). After the County moved to dismiss Sgt. Hood's claims, Sgt. Hood's race discrimination and FMLA claims were dismissed with prejudice. *See* Order, ECF No. 25. The parties proceeded to discovery on Sgt. Hood's retaliation claim. The County now moves for summary judgment on that remaining claim. Having reviewed the briefs and submitted materials, the Court finds no hearing necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the County's Motion for Summary Judgment is GRANTED.

## BACKGROUND

In November 2015, Sgt. Hood sat for the DOCR promotional examination. At the time of the exam, she was a corporal and was seeking to qualify for promotion to sergeant. During the

exam, Sgt. Hood's computer malfunctioned and she was unable to save a portion of the exam. In light of these technical difficulties, Sgt. Hood was given four to five additional minutes to complete the relevant exam portion and, with the assistance of an Information Technology specialist, was also able to save the exam. The relevant portion of Sgt. Hood's exam was also printed out for her to sign. Based on Sgt. Hood's score, she was not promoted to sergeant.

In December 2015, Sgt. Hood sent an email to various DOCR officials complaining about her computer malfunction and stating that she "refuse[d] to believe the results" of the promotion-exam process. Joint Record ("J.R.") 84, ECF No. 59. In that email, Sgt. Hood did not make any allegations of impermissible discrimination but instead confined her complaints to perceived issues with the exam-scoring process.

According to Sgt. Hood, in April 2016, she filed a complaint of race discrimination with the Montgomery County Office of Human Rights ("MOHR") based on the 2015 promotion exam. Sgt. Hood asserts that she was given a Right-to-Sue Letter that same month, after only a cursory investigation. No documents from that process were attached to Sgt. Hood's original or amended Complaint or included in the summary judgment Joint Record.

In July 2016, Sgt. Hood, through her Union, filed a grievance with the Offices of the County Executive asserting that the examination process, specifically the computer malfunction, caused her undue hardship that placed her at an unfair disadvantage, in violation of various terms of the collective bargaining agreement. In October 2016, after a fact-finding and appeal process, that grievance was denied.

In September 2016, Sgt. Hood filed a second complaint with MOHR, again asserting race discrimination and adding an allegation of retaliation. She received a Right-to-Sue Letter on September 29, 2016. In her Amended Complaint and again in her affidavit submitted with her

Memorandum in Opposition to the Motion for Summary Judgment ("Opposition"), Sgt. Hood identifies what she believes to be the actionable retaliation as (1) the alteration of her time sheets; (2) citations for tardiness when the time clock was known to have malfunctioned; (3) being discouraged or hindered from taking sick leave and FMLA leave; and (4) efforts by Warden Susan Malagari to remove her from a prestigious Audit Team assignment.

As to the alteration of her time sheets, Sgt. Hood testified in her deposition that at some unspecified time, she and another corrections officer helped with a special program at the prison at which she worked, and as a result Deputy Warden Starkey instructed Lieutenant ("Lt.") Beam to give each of them an hour of overtime. Sgt. Hood asserts, however, that her time sheet was later altered by either Lt. Carroll or Lt. Beam to include eight hours of overtime. When Sgt. Hood asked Lt. Beam about the change, he told her that he was simply trying to "put more money in [her] pocket." J.R. 18. Sgt. Hood believes that this alteration was intended to cause her to approve a false time sheet.

On the issue of citations for tardiness, in December 2016, Sgt. Hood received a Staff Improvement Form, known as a DCA 52, citing her for five instances of unexcused tardiness. Sgt. Hood challenged the DCA 52, asserting that many of her late arrivals were approved FMLA leave. In response to Sgt. Hood's challenge, Warden Malagari reviewed the DCA 52 and determined that three of the instances either were or were possibly approved FMLA leave, and that one of them could not be properly substantiated by DOCR, leaving Sgt. Hood with only one instance of unexcused lateness. As a result, Warden Malagari rescinded the DCA 52. In her deposition, Sgt. Hood asserted that in 2018, she was again being improperly cited for tardiness but that the situation was later resolved.

As to being removed from the Audit Team, in 2016, Sgt. Hood was selected for the Audit Team, the group responsible for preparing the prison for evaluation by the Maryland Commission on Correctional Standards. At her deposition, Sgt. Hood testified that when Warden Malagari learned that Sgt. Hood had been selected for the Audit Team, she stated that she wanted Sgt. Hood removed for unstated reasons. Nevertheless, Sgt. Hood remained on the Audit Team, and in September 2016, Warden Malagari gave her a Letter of Recognition for her work in that capacity.

As for FMLA leave, Sgt. Hood asserted in her deposition that from September 2017 to January 2018, Steve Frachette, the FMLA Administrator, tried to justify not approving her FMLA requests to arrive late and to get her FMLA accommodations rescinded. Sgt. Hood has not demonstrated that these efforts were successful.

Although the allegations in Sgt. Hood's original and amended Complaints are confined to the above four issues, in her Opposition, Sgt. Hood presses a new theory of retaliation, that the DOCR's handling of her 2017 workers' compensation claims was retaliation for her 2016 complaints about the promotion exam. As to this new theory of liability, in her deposition, Sgt. Hood testified that in March and April 2017, she filed workers' compensation claims and that, at some point during the workers' compensation process, she was told by Lt. Robinson and Lt. Chisley that someone at DOCR was trying to sabotage her April claim. Sgt. Hood does not identify the DOCR employee or employees who allegedly attempted that sabotage, nor is there any other evidence in the record on this point. Sgt. Hood ultimately reached a settlement of the April 2017 workers' compensation claim. According to Sgt. Hood, during an investigation of the allegations of sabotage, she was pressured to reveal Lt. Chisley's identity but did not do so because she feared that he would be subjected to retaliation. Sgt. Hood was not disciplined for that refusal.

In 2017, Sgt. Hood again sat for the promotion exam. On that occasion, she qualified for promotion and received the rank of sergeant in August 2018.

Meanwhile, on December 23, 2016, Sgt. Hood filed suit in this Court asserting three causes of action: (1) race discrimination in violation of Title VII; (2) retaliation in violation of Title VII; and (3) a violation of the FMLA. On February 24, 2017, Sgt. Hood filed an Amended Complaint, which the County moved to dismiss. After a hearing, the Court dismissed Sgt. Hood's race discrimination and FMLA claims with prejudice. The County now moves for summary judgment on Sgt. Hood's remaining claim of retaliation.

## DISCUSSION

In its Motion for Summary Judgment, the County asserts that Sgt. Hood's retaliation claim fails for three reasons: (1) she did not engage in qualifying protected activity because, although she filed a September 2016 Charge of Discrimination, no reasonable person in Sgt. Hood's circumstance could have believed that her failure to be promoted in 2015 was the result of race discrimination; (2) Sgt. Hood adduced no evidence that she endured any materially adverse action in the wake of any protected activity; and (3) Sgt. Hood has failed to demonstrate causation between her protected activity and any materially adverse action. Sgt. Hood opposes the Motion.

I.  **Legal Standard**

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing a motion, the Court must believe the evidence of the non-moving party, view the facts in the light most favorable to the nonmoving party, and draw all justifiable inferences in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

"A material fact is one that might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson*, 477 U.S. at 248). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248–49.

## II. Retaliation

To establish a *prima facie* case of retaliation, a plaintiff must present facts that establish that (1) the plaintiff engaged in a protected activity; (2) the employer took a materially adverse action against the plaintiff; and (3) "there was a causal link between the two events." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015). "Protected activity" consists of "oppos[ing] any practice made an unlawful employment practice" under Title VII. 42 U.S.C. § 2000e-3. Employment practices made unlawful by Title VII are those that discriminate against employees on the basis of race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e-2 (delineating unlawful employment practices under Title VII). Thus, while Sgt. Hood's September 2016 Charge of Discrimination would constitute protected activity, her union grievance would not. *See Johnson v. Mechanics & Farmers Bank*, 309 F. App'x 675, 685–86 (4th Cir. 2009) (emphasizing that, when applying Title VII retaliation analysis to an Age Discrimination in Employment Act claim, "it is fundamental" that a plaintiff must have engaged "in activities opposing discrimination"); *cf. Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 216–17 (4th Cir. 2002) (finding no ADA retaliation claim because the plaintiff could not reasonably believe that the conduct she had opposed violated the ADA, even though the opposed conduct could have violated state medical malpractice law).

A retaliation claim may be analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Yashenko v. Harrah's NC Casino Co.*, 446

F.3d 541, 550–51 (4th Cir. 2006). If Sgt. Hood establishes a *prima facie* case of retaliation, the burden shifts to the County to show a legitimate, non-retaliatory reason for the adverse action. *See id.* at 551. If the County makes such a showing, the burden then shifts back to Sgt. Hood to show that the stated reason was pretextual and that retaliation was the "actual reason" for the materially adverse action. *See Foster v. University of Md.—Eastern Shore*, 787 F.3d 243, 253–54 (4th Cir. 2015).

Causation must be established at two stages of the *McDonnell Douglas* framework: first, in making a *prima facie* case, and second, in proving pretext and satisfying the ultimate burden of persuasion. *Foster*, 787 F.3d at 250. The difference between the two stages is that the burden for establishing causation at *the prima facie* stage is "less onerous." *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989). A causal connection "exists where the employer takes [an] adverse employment action against an employee shortly after learning of the protected activity." *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004). At the *prima facie* stage, causation may be established by the proximity between when the protected activity took place and when the employee was subjected to a materially adverse action. *See, e.g., id.* ("Appellant's proof of a causal connection between the protected activity and her discharge essentially was that she was fired after her employer became aware that she had filed a discrimination charge. While this proof far from conclusively establishes the requisite causal connection, it certainly satisfies the less onerous burden of making a prima facie case of causality."). However, "[s]ince, by definition, an employer cannot take action because of a factor of which it is unaware, an employer's knowledge that the plaintiff engaged in protected activity is absolutely necessary to establish [the causation element]." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998).

7

As a threshold issue, in her Opposition, Sgt. Hood purports to identify five issues of factual dispute that would preclude summary judgment. In fact, none of these issues frame such a dispute of fact. The first, whether Sgt. Hood's complaint of race discrimination arising from the 2015 promotion examination constitutes protected activity, is essentially a question of law, which, as noted below, the Court need not decide to resolve the Motion. A second alleged factual dispute, whether the investigation into the 2015 promotion examination was designed to elicit the identities of individuals who reported cheating on the exam, is irrelevant to the Motion. The final three alleged factual disputes are actually just statements of the ultimate questions to be considered by the Court: whether the alleged hindering of FMLA leave, the issuance of a DCA 52 relating to citations of tardiness, and the denials of workers' compensation claims were retaliatory. Upon a review of the record, the Court finds no genuine issues of material fact relating to these issues because, as discussed below, even viewing the evidence in the light most favorable to Sgt. Hood, as is required on a motion for summary judgment, it is insufficient to support a finding that any of the alleged adverse actions constituted retaliation in violation of Title VII.

Assuming without deciding that Sgt. Hood engaged in protected activity by filing her April and September 2016 charges of discrimination, Sgt. Hood's retaliation claim fails because whether viewed at the *prima facie* stage or on the ultimate issue of retaliation, Sgt. Hood has not established any viable causal link between the alleged retaliatory actions against her and her protected activity. Specifically, upon consideration of the asserted acts of retaliation, the Court finds nothing in the record from which one could conclude that any alleged perpetrators of those actions were aware that she had engaged in protected activity. Secondarily, the Court concludes that several of the alleged retaliatory acts either do not constitute materially adverse actions under Title VII or were

too far removed in time to be plausibly linked to Sgt. Hood's 2016 discrimination complaints. The Court addresses each alleged retaliatory action in turn.

As to the alteration of her timesheets, Sgt. Hood does not identify when this alleged alteration took place, so it is impossible to infer any causal relationship between the timesheet alteration and any protected activity, nor has she identified evidence that Lt. Beam or Lt. Carroll knew, at the time of the alleged alteration, that Sgt. Hood had engaged in protected activity. The timesheet alteration is therefore not a viable basis for her retaliation claim. *See Dowe*, 145 F.3d at 657.

As for the citations for tardiness, Sgt. Hood does not identify who issued those citations and so cannot establish that the citing officer or officers knew of her protected activity. *See id.* Nor does Sgt. Hood assert or provide evidence to establish that Warden Malagari, who reviewed her DCA 52, knew of her protected activity. *Id.* Indeed, after her review, Warden Malagari actually agreed that most of the citations were not justified and rescinded the DCA 52, such that the citations for tardiness are not a viable basis for a retaliation claim. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (holding that in the context of a retaliation claim, an adverse employment action is a "materially adverse" action, "which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination") (citations omitted).

Sgt. Hood's claim relating to her Audit Team assignment fails for the same reason: she provides no facts to show that Warden Malagari was aware of Sgt. Hood's protected activity at the time that she opposed the assignment, and Sgt. Hood suffered no materially adverse consequence because she was actually allowed to join the team and went on to receive a commendation from Warden Malagari for that work. *See id.*

9

As for Sgt. Hood's claim of retaliation when she was hindered in using her FMLA leave, to the extent that claim stems from the citations for tardiness, it fails for the reasons stated above, and to the extent it is based on the alleged efforts by Frachette, the FMLA Administrator, to get Sgt. Hood's FMLA accommodations rescinded or otherwise hinder her ability to use her FMLA leave, Sgt. Hood presents no evidence that Frachette knew that she had engaged in protected activity. Furthermore, even if Frachette had been aware of Sgt. Hood's protected activity, Sgt. Hood has not produced evidence that those efforts were successful, so they did not constitute a materially adverse action. *See id.* Finally, because his alleged efforts began in September 2017, in the absence of any other evidence of their retaliatory nature, they are too distant in time from her April and September 2016 complaints to support a plausible inference of causation. *See Price,* 380 F.3d at 213 (stating that in establishing causation, "the passage of time" tends to "negate the inference of discrimination"); *cf. Carter v. Ball,* 33 F. 3d 450, 460 (4th Cir. 1994) (finding that an adverse employment action that occurred six weeks after the plaintiff's protected activity was sufficient to support an inference of causation for purposes of establishing a *prima facie* case of retaliation).

Lastly, Sgt. Hood's belated attempt to tack her 2017 workers' compensation proceedings onto her retaliation claim fails for similar reasons. Sgt. Hood provides no evidence linking anyone involved in those workers' compensation determinations with her 2016 complaints about the promotion-exam process. Indeed, Sgt. Hood fails to identify any individual whom she alleges was responsible for trying to sabotage her workers' compensation claims. *See Dowe,* 145 F.3d at 657. In addition, without any other evidence of retaliatory motivation, those proceedings are too removed in time from her original discrimination complaint to support a finding of causation. *See Price,* 380 F.3d at 213.

10

More broadly, Sgt. Hood, in her deposition, lays out a series of grievances and alleged retaliation at DOCR spanning the past decade. But there is nothing in Sgt. Hood's deposition testimony or elsewhere in the record that ties any of these isolated incidents—some of which occurred before 2016—to Sgt. Hood's protected activity. Although Sgt. Hood, in her deposition, asserts that these incidents created a hostile work environment, her race discrimination claim was dismissed, and she did not plead a hostile work environment claim, so she cannot avoid summary judgment based on such an allegation. *See Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (stating that a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motions briefs, amend the complaint"), *aff'd* 141 F. 3d 1162 (4th Cir. 1998). While it is clear that Sgt. Hood takes issue with a number of the practices of DOHR and with the behavior of a number of her colleagues, she has produced no evidence connecting those practices or behaviors to her protected activity, so she cannot use them to establish a viable claim of retaliation, which is the only cause of action she has before this Court. *See Burlington N.*, 548 U.S. at 68 (emphasizing that retaliation claims under Title VII are not "a general civility code for the American workplace," and thus "normally petty slights, minor annoyances, and simple lack of good manners" are not a basis for such claims) (citation omitted); *Price*, 380 F.3d at 213. Accordingly, the County is entitled to summary judgment on the retaliation claim.

## CONCLUSION

For the foregoing reasons, the County's Motion for Summary Judgment will be GRANTED. A separate Order shall issue.

Date: July 17, 2019

THEODORE D. CHUANG
United States District Judge